# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**Bergeron**                     **Civil Action No. 6:16-Cv-01043**

**Versus**                       **Unassigned District Judge**

**Colvin**                       **Magistrate Judge Carol B. Whitehurst**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be remanded.

### I.   ADMINISTRATIVE PROCEEDINGS

The claimant, Amanda Bergeron, fully exhausted her administrative remedies

prior to filing this action in federal court.  The claimant filed an application for

disability insurance benefits ("DIB") and an application for supplemental security

income benefits ("SSI"), alleging disability beginning on November 20, 2011.[1]  Her

applications were denied.[2]  The claimant requested a hearing,[3] which was held on

---

[1]    Rec. Doc. 11-1 at 33.

[2]    Id.

[3]    Id.

˅1˅

March 1, 2013 before Administrative Law Judge Robert Grant.[4]   The ALJ issued a decision on April 18, 2013,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from November 20, 2011 through the date of the decision.   The claimant asked for review of the decision, but the Appeals Council concluded on May 29, 2014 that no basis existed for review of the ALJ's decision.[6]   Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## II.  SUMMARY OF PERTINENT FACTS

The claimant was born on January 20, 1962.[7]   At the time of the ALJ's decision, she was 51 years old, defined as an individual closely approaching advanced under the Act. She has a high school education.[8] She has past relevant

---

[4]     The hearing transcript is found at Rec. Doc. 11-1 at 45.

[5]     Id. at 39.

[6]     Id. at 1.

[7]     Id, at 100.

[8]     Id. at 49.

work experience as a sausage packer.[9]   She alleges she has been disabled since November 20, 2011 due to back pain and ulcerative colitis.[10]

In April 2011, a colonoscopy performed at Earl K. Long Medical Center ("EKL") showed "ulcerative colitis with no active disease, however, there was decreased vascularity in the sigmoid colon." *Tr. pp. 195, 198*. She was also diagnosed with internal and external hemorrhoids. *Id.* Claimant also suffered from back pain radiating into her legs. *Tr. pp. 47-48.* In September 2011, she reported that she had received a steroid injection about a year earlier, but that her pain had returned several weeks ago and medications had been ineffective, *Tr., p. 212.* An MRI of the lumbar spine showed mild facet hypertrophy. *Tr. p. 248.*

Claimant was treated for back pain at the EKL emergency room on October 17, 2011, *Tr. p. 208,* and again on November 22, 2011, *Tr. pp. 182-85*. Claimant was diagnosed with sciatica or lumbar radiculopathy. *Tr. pp. 185, 189*. Claimant was once again treated for abdominal and back pain at the emergency room on November 26, 2011. *Tr. pp. 206-07.*

---

[9]      Id.

[10]     Id. at 142.

In January 2012, Claimant began receiving treatment for left hip and lower back pain from an orthopedist at EKL. *Tr. p. 203*. X-rays of her lumbar spine showed mild facet degenerative joint disease and lower thoracic spondylosis. *Tr. p. 220*.

In March 2012, the EKL clinic notes indicate depression/anxiety, in addition to lower back pain/hip pain/neuropathy and chronic diarrhea due to ulcerative colitis. *Tr. p. 201*. Claimant was taking Neurontin, Buspar, and Trazodone. *Tr. p. 201*.

As of May 2012, the EKL Clinical Notes Claimant indicate that claimant was having three bad days a week, with diarrhea six times a day. *Tr. p. 267*. None of her medications for ulcerative colitis had helped her diarrhea, cramping, and abdominal pain. *Tr. pp. 261, 267*. Claimant's EKL gastroenterology specialist prescribed a short-dose steroid suppository and another medication. *Tr. p. 261*.

In February 2014, EKL-affiliated physician, Zack Band, M.D., completed a "Crohn's, Colitis, Gastritis, and/or Irritable Bowel Syndrome Questionnaire assessing Claimant's impairments. *Tr. pp. 227-230*. Dr. Band stated that Claimant's pain would occasionally interfere with her ability to maintain the attention and concentration required of even simple tasks. *Tr. p. 228*. She could perform only low stress work, with frequent bathroom breaks. *Id.* She could stand/walk less than two hours per day and sit about four hours per day. *Tr. p. 229*. She would require a job that allowed shifting positions at will and ready access to a restroom. *Id*. In

particular, she would need to be away from the work station for 30 minute bathroom breaks four to five times a day. *Id*. She would also need to lie down once or twice daily for twenty minutes at a time. *Id*. She could rarely lift twenty pounds, twist, stoop, crouch, or climb stairs. *Tr. p. 230*. Finally, she would need to be absent from work more than twice a month. *Id*.

At the March 1, 2013 hearing on this matter, Leonard Francois, vocational rehabilitation expert, testified that it was his opinion that Claimant could not perform her past work as a sausage packer and there were no jobs in the national or regional economy available with her limitations. *R. 11-1, pp. 56-57*.

## III. ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[11] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]

---

[11] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[12] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162,

Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[13]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[14]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[15] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[16]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:   (1) objective medical facts, (2) diagnoses and opinions of treating and examining

---

164 (5th Cir. 1983)).

[13]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[14]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[15]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[16]    *Martinez v. Chater*, 64 F.3d at 174.

physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[18]    Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[19]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]    A claimant shall be determined to be disabled only if his physical or mental impairment

---

[17]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[18]    See 42 U.S.C. § 423(a).

[19]    42 U.S.C. § 1382(a)(1) & (2).

[20]    42 U.S.C. § 1382c(a)(3)(A).

or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

## C.    Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[22]   If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.   "A finding that a claimant is disabled

---

[21]    42 U.S.C. § 1382c(a)(3)(B).

[22]    20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[23]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[25]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[26]

The claimant bears the burden of proof on the first four steps.[27]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[23]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[24]    20 C.F.R. § 404.1520(a)(4).

[25]    20 C.F.R. § 404.1545(a)(1).

[26]    20 C.F.R. § 404.1520(e).

[27]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[29]   If the Commissioner

makes the necessary showing at step five, the burden shifts back to the claimant to

rebut this finding.[30]   If the Commissioner determines that the claimant is disabled

or not disabled at any step, the analysis ends.[31]

## D.    The ALJ's Findings and Conclusions

In this case, the ALJ determined, at step one, that the claimant has not engaged

in substantial gainful activity since November 20, 2011.[32]   This finding is supported

by the evidence in the record.

At step two, the ALJ found that the claimant has the following medically

determinable impairments: colitis, degenerative disk disease of the lumbar spine,

obesity and unspecified mental impairments. (20 CFR 404.1521, *et seq.*)   The ALJ

specifically considered claimant's obesity.   Considering Social Security Ruling 02-

1p which provides guidance for evaluating claims where obesity is an impairment,

the ALJ found that "obesity can cause limitations of functions such as sitting,

---

[29]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[30]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).   See, also, 20 C.F.R. § 404.1520(a)(4).

[32]      Rec. Doc. 11-1, at 35.

standing, walking, lifting, carrying, pushing and pulling.   It can also affect postural functions such as climbing, balancing, stooping, and crouching.   The claimant's ability to perform routine movement and necessary physical activity within the work environment has been further impaired by her obesity. The combined effects of obesity with her other impairments is greater than might be expected without the obesity."   The ALJ found, however, that the claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. (20 CFR 404.1521 *et seq*).[33]

In making this determination, the ALJ specifically stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.[34]

Thus, the ALJ held that the claimant was not disabled from November 20, 2011 through April 18, 2013 (the date of the decision). The claimant challenges this finding.

---

[33] Id. at 35-36.

[34] Id. at 37.

### E.    The Allegations of Error

*1.  Did the ALJ Err in Finding that Claimant Has No Combination of Impairments with More Than Minimal Effects*

Ms. Bergeron claims that the ALJ erred at step two in finding that she had no severe impairment. In *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe: an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citing Social Security Ruling (SSR) 85-28 in defining a non-severe impairment as a "slight abnormality" that has "no more than a minimal effect" on the claimant's ability to work). Step 2 severity is a "*de minimis*" standard and should be resolved in favor of the claimant when any doubt exists. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

In his ruling, the ALJ stated that the claimant had multiple medically determinable impairments—colitis, degenerative disk disease of the lumbar spine, obesity and unspecified mental impairments. While the ALJ summarized the EKL medical records and claimant's testimony as to her symptoms, the ALJ focused

on claimant's obesity. In evaluating her obesity pursuant to Social Security ruling 02-1p, the ALJ stated that claimant's ability to "perform routine movement and necessary physical activity" was eroded by her combined impairments, then further eroded by her obesity. *Tr. 36.* Such a finding indicates that claimant's impairments interfered with her ability to work and had more than a minimal effect on her ability to work, thus meeting the *Stone* standard. Rather than making any further findings regarding claimant's ability to perform basic work related activities, however, the ALJ merely listed the medical findings of record, rejected the opinion of Dr. Band as to claimant's functional limitations, assessed only the functional limitations caused by claimant's mental impairment, and determined claimant's impairments to be nonsevere. *Tr. 37-39.*

Contrary to his ruling, in the March 1, 2013 hearing the ALJ posed a hypothetical to the vocational expert, Leonard Francois, that accounted for claimant's age, education, work experience, and physical limitations as provided by the medical records and claimant's testimony. The hypothetical contained several limitations, including inability to sustain sufficient concentration, persistence or pace to do even simple, routine tasks on a regular and continuing bases for eight hours a day, five days a week for 40 hours. *Tr. 11-1, p. 57.* Francois testified that such a person could not perform the claimant's past relevant work

and there were no jobs in the national or regional economy that she could perform. Id.

An ALJ may not simply outline a claimant's medical findings and then blindly assert that they do not meet the definition of a severe impairment. Rather, impairment severity must be assessed with respect to a claimant's work-related abilities. *See Stone*, at 1103-05. Moreover, the rationale for a disability determination must be written so that a clear picture of the disability can be obtained—that specific evidence leads to a specific conclusion. SSR 83-14, 1983 WL 31254.   The Court finds reversal and remand is required for further evaluation of claimant's combined impairments.

2.    *Did the ALJ Err in Rejecting the Treating Medical Opinion, Relying Instead On His Own Lay Interpretation of the Medical Evidence?*

Ms. Bergeron also claims that the ALJ erred by giving the medical opinion of Dr. Band "little weight" because it was "not supported by the medical evidence of record"—thus, rejecting Dr. Band's opinion.[35] The medical records indicate that in February 2014, Dr. Zack Band completed a questionnaire related to

---

[35] Rec. Doc. 11-1 at 38.

claimant's colitis. Based on his apparent interview with the claimant, Dr. Band
reported that claimant's impairments would cause the following limitations:

> (1) limited ability to maintain attention and concentration to perform
> even simple tasks;
> (2) limitation to low stress work only;
> (3) frequent bathroom breaks (four to five times a day) of thirty
> minutes at a time required, with ready access to the bathroom;
> (4) standing/walking less than two hours per day;
> (5) sitting only four hours;
> (6) mandatory sit/stand option at will;
> (7) need to lie down once or twice daily for twenty minutes;
> (8) rarely lift twenty pounds, twist, stoop, crouch, or climb stairs;
> (9) need to be absent from work more than twice a month,

*Tr. 227-30.*

The medical records indicate that claimant was treated for her medical
issues and needs at EKL, a state run hospital and member of the Louisiana State
University Medical Center. Because of the structure of EKL, claimant was unable
to secure one treating physician and was required to see the physician assigned to
her case on the date she was in attendance. While it may not be unusual that Dr.
Band would only see claimant once, it is unusual that there was no EKL clinical
note associated with claimant's visit to Dr. Band; nor was there any other medical
evidence in the record indicating whether Dr. Band was a specialist or whether
Dr. Band ever saw claimant before or after the questionnaire was completed.
During the time of the questionnaire, claimant was usually seeing Samaki Sanders

ˇ15ˇ

Green, a nurse practitioner at EKL. "[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, and responses should be accorded considerable weight in determining disability." *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The Court agrees that Dr. Band's opinion based solely on the questionnaire does not deserve the same deference as a treating physician's opinion.

Regardless of the ALJ's determination that Dr. Band's opinion should be accorded "little weight," the ALJ stated the reason Dr. Band's opinion was rejected was that it was "not supported by the medical evidence of record." The ALJ cited no medical evidence to support his conclusion. Instead, the ALJ relied upon his own lay interpretation of the medical evidence. It is well-established that "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Here, the ALJ made no mention of the medical records of the claimant's treating physicians at EKL. The ALJ failed to cite any other medical source opinions and therefore could not have accorded the weight

of any source other than his own. Remand is required for further evaluation of the medical evidence of record.

3.    *Did the ALJ Fail to Address Any of the Required Factors in Finding that Claimant's Subjective Complaints Were Not Credible.*

Despite giving "little weight" to Dr. Band's opinion, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." The ALJ found, however, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision." Any discussion of the credibility factors set forth in 20 C.F.R. § 404.1529(c)(3) is absent from the ALJ's decision.

In assessing the credibility of a claimant's subjective complaints, an ALJ must consider such factors as stated activities of daily living, location, duration, frequency, and intensity of pain or other symptoms, precipitating and aggravating factors, current treatment, medication and any side effects, or other methods of alleviating pain, to determine the limiting effects of any impairment or symptomology on the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(3). In assessing these factors, the ALJ must explain the basis for his findings. SSR 96-7p, 1996 WL 374186, at *2 ("When evaluating the credibility of an

individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."); *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994). This is merely an extension of the axiomatic rule that an ALJ is required to explain clearly the basis for each of his findings. SSR 82-62, 1982 WL 31386; SSR 83-14, 1983 WL 31254.

The claimant contends that the ALJ's only discussion of any of the credibility factors consisted of his conclusory analysis of claimant's daily activities in assessing her mental impairments *Tr. 38-39*. The ALJ listed the four functional areas and his perception of the claimant's corresponding activities: 1. activities of daily living ─ prepares simple meals and does the laundry, able to drive and handle money (paying bills and maintaining a checking account); 2. social functioning─ visits with her boyfriend and her family, attends medical appointments, goes out to pay bills and pick up medications, drives; 3. concentration ─ follows both written and spoken instructions; no problems handling stress and routine changes, watches television and works puzzles; 4. decompensation ─ none of extended duration. *Id.* Citing the ALJ's own opinion, the hearing transcript and the Commissioner's Function Report completed by Ms. Bergeron, claimant argues that the ALJ failed to consider the quality of the listed activities as provided by the record.

As to the "activities of daily living" area, claimant states that "most of her meals were cereal and she was unable to prepare complete meals, *Tr. 152,* she "could [only]fold clothes while sitting down but that she could not do household tasks that required lifting, straining, or bending" *Tr. 53-54, "*she could only drive when she was feeling well", *Tr. 154.* As to the "social functioning" and "concentration" areas, she states that she was too weak, tired, or in pain to engage in working puzzles and visiting on some days and only weekly at the most. *Tr. 154.* An ALJ must consider not just whether a claimant performs daily activities, but the quality of such activities, including "their independence, appropriateness, effectiveness, and sustainability." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).

The claimant further argues that the ALJ failed to acknowledge that her treatment history supports her subjective complaints. First, the record provides that the medications were ineffective in treating the claimant's ulcerative colitis. *Tr. 261, 267.* Also, she required emergency room care for back and abdominal pain on three occasions within one month. *Tr. 182-85, 206-07, 208.*

Finally, she argues the ALJ should have considered her 18 year employment as a sausage packer for the same employer, *Tr. 143-144,* in accessing her credibility. When the claimant has worked for a long period of time, his

testimony about his work capabilities should be accorded substantial credibility. *Calais v. U.S. Commissioner Social Security Administration*, 2016 WL 829310, at *8 (W.D.La., 2016) (citing *Rivera v. Schweiker,* 717 F.2d 719, 725 (2nd Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Here, the ALJ failed to make any analysis of claimant's subjective complaints, particularly her need for frequent extended bathroom breaks caused by her colitis. A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court finds that the ALJ's credibility determination is not supported by substantial evidence and recommends that this matter be remanded so that the claimant's credibility can be reevaluated.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to (1) properly evaluate the severity of each of the claimant's impairments and the combination of her impairments, including but not limited to her obesity, (2) properly evaluate the

˘20˘

claimant's medical evidence, and (3) properly evaluate the claimant's credibility. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 8th day of June 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE